IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Andrija James Balas, | ) | No. CV-10-101-PHX-PGR (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Charles L. Ryan, et al., | ) ) | |
| Respondents. | ) ) | |
| _____ | ) ) | |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. (Doc. 1)  Respondents have filed an Answer.  (Doc. 18)   Petitioner has not replied, and the deadline in which to do so has passed.   After considering the briefing, exhibits, and relevant law, it is recommended that the Petition be denied.

**I. Factual and Procedural Background**

    **A.  Charges, Trial and Sentencing**

On June 17, 2002, the State of Arizona filed an indictment, charging Petitioner with theft of means of transportation, a class 3 felony; and first-degree criminal trespass. (Respondents' Exh. A)   The criminal trespass charge was subsequently dismissed. (Respondents' Exh. D)   The State also alleged that at the time of the offenses, Petitioner was on probation for possession of dangerous drugs, and on parole for criminal trespass. (Respondents' Exh. B)   The State further alleged that Petitioner had three historical felony convictions.  (Respondents' Exh. C)

The 2002 charges were based on the following events.  On May 24, 2002, Jose Alvarado's white 1979 Ford Probe was stolen from his house.  (Tr. 4/13/05 at 109-110)[1] Alvarado reported the theft to police.  (Tr. 4/13/05 at 110)

On June 25, 2002, Phoenix Police Officers Larry Moran and John Oehler were stopped at traffic light at Northern and 23rd Avenue.  (Tr. 4/13/05 at 117; Tr. 4/14/05 at 12) While at the intersection, the officers observed a white Ford Probe run the red light.  (Tr. 4/13/05 at 117-18, 124; Tr. 4/14/05 at 12)   Officer Moran activated the emergency lights and tried to stop Petitioner, who was later identified as the driver of the Ford Probe, for the traffic violation.  (Tr. 4/13/05 at 117; Tr. 4/14/05 at 12-13)   Petitioner pulled into a parking lot, and then accelerated and tried to drive through the parking lot.  (Tr. 4/13/05 at 117-18; Tr. 4/14/05 at 13)   Petitioner struck a curb, lost control of the car, and crashed into a tree. (Tr. 4/13/05 at 117-18; 4/14/05 at 13)

Petitioner exited the car and ran westbound through the parking lot toward the I-17 freeway access.  (Tr. 4/13/05 at 118, 127, 134; Tr. 4/14/05 at 13-14)   Petitioner's passenger, later identified as Terry O'Brian, exited the vehicle with his head bleeding.  (Tr. 4/13/05 at 118-20, 131; Tr. 4/14/05 at 13-14)   Officers Moran and Oehler stayed with O'Brian, who received medical attention.  (Tr. 4/13/05 at 119-20)   In the meantime, additional police officers established a perimeter in an attempt to apprehend Petitioner.  (Tr. 4/14/05 at 28-29, 46)

Officer Christopher Trapp, posted along the access road to I-17, saw a man matching Petitioner's description.  When Petitioner noticed Officer Trapp, he "cut southbound through houses and jumping fences."  (*Id*. at 47-48)   Officer Trapp followed Petitioner for several blocks and caught him when he "ran out of gas."  (*Id*.)   When Petitioner was taken into custody, he had keys to a Toyota and a Cheverolet, a plastic "key card," and a pair of "white gloves."  (Tr. 4/14/05 at 31-32)

---

[1]  Citations to "Tr." refer to transcripts that appear at Respondents' Appendix A.

1  The police returned Petitioner to Officer Moran, who recognized him as the driver of

2  the Ford Probe that had run the red light.  (Tr. 4/13/05 at 124; Tr. 4/14/05 at 30)   Petitioner

3  identified himself as "Slavko" Balas, which was not his true first name.  (Tr. 4/13/05 at 123-

4  24; Tr. 4/14/05 at 8-9)

5  When police recovered the Ford Probe from Petitioner, it had a temporary license

6  plate, that was not the proper license plate for the vehicle.  (Tr. 4/13/05 at 110-11)   The

7  ignition had been "punched" or "hollowed out" which indicated that the car was likely

8  stolen.   When an ignition has been "punched," "any device [can] be used to . . . start the

9  vehicle."  (Tr. 4/13/05 at 121, 129, 131-32, 134-35; Tr. 4/14/05 at 9-10, 15-16, 19-22, 26-27)

10  Inside the car, police found the following: (1) a license plate that did not belong to the

11  vehicle; and (2) several keys, including a key ring with five Ford keys and a Nissan key.

12  (Tr. 4/13/05 at 121-24; Tr. 4/14/05 at 7, 15-16)

13  Petitioner's case proceeded to a jury trial.[2]  Petitioner appeared in jail clothing.   (Tr.

14  4/13/05 at 19)   During *voir dire*, the court addressed the issue of Petitioner's attire:

> Mr. Balas has chosen to not change into street clothes.   He is obviously in
> custody.  Is that going to impact anyone's ability to be fair and impartial, the
> fact that he is currently in custody?  You will probably get an instruction
> saying you can't consider that fact in determining whether he is guilty or
> not guilty as charged on the offense.  Is anybody going to have a problem
> following that jury instruction?

(*Id.*)   None of the jurors responded affirmatively.  (*Id.*; Exh. V)

After the State presented its case, Petitioner moved for judgment of acquittal under

Ariz.R.Crim.P. 20.  (Tr. 4/14/05 at 51)   The trial court denied the motion stating:

> Well, it is substantial evidence, and substantial evidence on which a jury
> could conclude beyond a reasonable doubt that the crime was committed
> and that the defendant committed the crime.  And, the elements are that
> the defendant knowingly and without lawful authority controlled another
> person's means of transportation.
>
> Obviously, there is evidence that [Petitioner] was driving the car.  Mr.
> Alvarado testified that the car was stolen and that [Petitioner] did not have
> permission to control the car.

---

[2] The Honorable Gary E. Donahoe presided over Petitioner's trial and post-conviction proceedings.

> The second element that the defendant knew or had reason to know the vehicle was stolen.  And I think there is substantial evidence on which a jury could conclude that [Petitioner] knew or had reason to know the vehicle was stolen, and the vehicle . . . had a punched ignition which folks said, well, if you started it, it would be obvious.
>
> Also Officer Oehler testified that the face plate, that people are familiar with, was off of it so that would be another indication.  If there are multiple keys in the vehicle, there was a license plate in the vehicle that was not attached to the vehicle.
>
> There was a temporary plate on the vehicle, not proper for this vehicle, and I think . . . based on that, the jury could conclude beyond a reasonable doubt that the defendant knew or had reason to know the vehicle was stolen.

(Tr. 4/14/05 at 52-53)

Thereafter, the defense presented its case and Petitioner testified on his own behalf. (Tr. 4/14/05 at 68)   Petitioner denied having stolen the Ford Probe, but admitted he was present when the car crashed into the curb.  (*Id*. at 69-72, 90)   Petitioner claimed that he got the car from his friend "Kathy," and did not know it was stolen.  (*Id*. at 72-74) When asked about the white gloves and car keys in his possession when he was arrested, Petitioner explained that he used the gloves to protect his hand when he goes "dumpster diving," and that he found "shiny things," like car keys, when he dumpster dives.  (*Id*. at 74-75, 85, 91) When asked about the absence of a key in the car's ignition, Petitioner said, "I  d[id]n't start the car.  She pulled up in the car.  She pulled up in the car and says here."  (*Id*. at 93)

Petitioner stated that Kathy came by the house where all the "dumpster diving people" hung out.  (*Id*. at 87)   Petitioner was "not sure" how long he had known Kathy, was "not sure" whether she was "in her 20's, 30's, 40's or 50's," and did not know here phone number or where she lived.  (*Id*. at 87-89)   Petitioner testified that Kathy "works for license plates' and "come[s] by the house where everybody hang[s] out . . . and sell[s] stuff in the front."  (*Id*. at 87-88)   Petitioner said that Kathy lets "you drive the car if you go get some things out of the dumpster and give it to her . . . ."  (Tr. 4/15/05 at 90-92)   He said that Kathy "had papers" for the car, and "told everyone at the house, this is mine."  (*Id*. at 93)

Petitioner said he ran from police because "the voices say run, run, they get me and, the friend in car say run, run, run, run, run, you got to go run , run.  And everything, turning

1  and the voices are saying run." (*Id*. at 82-83)   Petitioner had received some mental health

2  treatment, and stated that some of the doctors told him nothing was wrong and others gave

3  him medication. (*Id*. at 80; Respondents' Exh. E)

4  The jury instructions included the following instruction, "You must not consider the

5  fact that [Petitioner] is presently in custody in determining whether he is guilty or not

6  guilty." (Tr. 4/14/05 at 100-02)   The jury convicted Petitioner as charged. (Respondents'

7  Exhs. F, G)   After a sentencing hearing, the court sentenced Petitioner to the presumptive

8  term of 11.25 years in prison. (Tr. 6/10/05 at 22; Respondents' Exh. H)

9  **B. Direct Appeal**

10  Petitioner filed a timely notice of appeal. On May 30, 2006, Petitioner's counsel filed

11  a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), advising the court that

12  counsel found "no arguable question of law that is not frivolous." (Respondents' Exh. I)

13  Thereafter, Petitioner filed his own appellate brief, arguing that: (1) the trial court's jury

14  instruction on reasonable doubt violated Petitioner's "due process and fair trial rights;" and

15  (2) "requiring [Petitioner] to attend trial while wearing jail clothes, handcuffs, and shackles

16  violated his due process and fair trial rights." (Respondents' Exh. J)   In support of his

17  prison attire claim, Petitioner cited the testimony of Phoenix Police Officers Larry Moran,

18  Terry Smith, and Christopher Trapp, who identified Petitioner as the person in "white and

19  black." (Tr. 4/13/05 at 118; Tr. 4/14/05 at 29, 47-48)

20  On October 12, 2006, the Arizona Court of Appeals rejected Petitioner's claims and

21  affirmed his conviction. (Respondents' Exh. K)   Although the record did not contain

22  specific evidence that Petitioner was wearing "handcuffs and shackles," the appellate court

23  construed the trial court's statement that Petitioner was "obviously in custody," as

24  supporting the allegation that Petitioner was restrained. The court rejected Petitioner's

25  claims, finding that Petitioner was not subjected to "undue prejudice," and that Petitioner

26  had "either invited or waived any error regarding his in-custody appearance."

27  (Respondents' Exh. K)   The appellate court stated that:

28  [Petitioner] does not explain, and we do not discern, how his in-custody

appearance before the jury amounted to reversible error.  The record shows
that [Petitioner] himself chose to appear before the jury in jail clothes and
shackles.  As the trial court stated during jury selection.

> 'Mr. Balas has chosen to not change into street clothes. He is
> obviously in custody.
>
> Is that going to impact anyone's ability to be fair and impartial,
> the fact that he is currently in custody?  You will probably get an
> instruction saying that you can't consider that fact in determining
> whether he is guilty or not guilty as charged on the offense.  Is
> anybody going to have a problem following that jury instruction?'

The record does not reflect that anyone raised his or her hand.  Additionally,
throughout the trial, [Petitioner] never mentioned or objected to his in-custody
appearance.  At the close of evidence, the court instructed the jury that [it]
'must not consider the fact that [Petitioner] is presently in custody in determining
whether he is guilty or not guilty.'  We presume the jury followed the trial
court's instruction.  *State v. Miles*, 211 Ariz. 475, 483, ¶ 30, 123 P.3d 669,
677 (Ariz. Ct. App. 2005).   In light of the record before us, we decide that
the trial court did not subject [Petitioner] to undue prejudice and further
conclude that [Petitioner] had either invited or waived any error regarding
his in-custody appearance. . . .

(Respondents' Exh. K)

Petitioner filed a *pro se* petition for review in the Arizona Supreme Court, which summarily denied review on February 21, 2007.  (Respondents' Exhs. L, M)  Petitioner did not petition the United States Supreme Court for a writ of certiorari.

## C. Post-Conviction Review

On July 17, 2007, Petitioner filed an untimely notice of post-conviction relief in the trial court pursuant to Ariz.R.Crim.P. 32.  (Respondents' Exh. N)   Petitioner contended that his notice was untimely because he was placed in "C.D.U., due to improper medications," for approximately 60 days.  (*Id.*)  On July 25, 2007, the court dismissed the notice as untimely, stating that Petitioner had not substantiated his claim as required by Ariz.R.Crim.P. 32.2(b).  (Respondents' Exh. O)

On August 23, 2007, Petitioner filed a "*Pro Per* Petition for Post-Conviction Relief," which requested that the court subpoena Petitioner's medical records from two prison medical facilities.  (Respondents' Exh. P)   Although the court denied Petitioner's request to subpoena his records, on November 7, 2007, the court entered a minute entry stating that: (1) Petitioner had "sufficiently raised a claim pursuant to [Ariz.R.Crim.P.] 32.1(f)" to allow his

"untimely filing;" (2) allowing Petitioner to pursue post-conviction relief under Ariz.R.Crim.P. 32; and (3) appointing counsel for post-conviction review.   (Respondents' Exh. Q)   The court clarified that, "[t]his allowance does not constitute any expression of opinion that defendant has met the requirements to file an untimely petition or on the merits of any claims." (*Id.*)

On December 27, 2007, appointed counsel advised the court that she had "communicated with Petitioner, reviewed the transcripts and all relevant documents in [the] matter," and that she was "unable to discern any colorable claim upon which to base a Petition for Post-Conviction Relief." (Respondents' Exh. R)   The court granted Petitioner 45 days in which to file a *pro se* petition. (Respondents' Exh. S)

On January 16, 2008, Petitioner filed his own petition for post-conviction relief, raising the following claims: (1) the State forced Petitioner to appear at trial "clad in jail attire, handcuffs, chains, and shackles," in violation of his Fifth Amendment right to be "free from self-incrimination;" (2) trial, appellate counsel, and post-conviction counsel "failed to recognize the violation," and trial counsel was ineffective because he "failed to vehemently object to the egregious shackling and chaining while in the presence of the jury." (Respondents' Exh. T)   The State responded in opposition to Petitioner's request for post-conviction relief, and Petitioner replied.  (Respondents' Exhs. U, V)

On April 17, 2008, the trial court denied relief and dismissed the petition finding that, even if the petition were not untimely, Petitioner "failed to raise a colorable claim upon which relief can be granted." (Respondents' Exh. W)   The post-conviction court noted that the Court of Appeals had rejected Petitioner's jail-attire claim finding that, Petitioner had chosen to wear jail attire, the prospective jurors did not indicate that Petitioner's attire or in-custody status would impact their ability to be fair and impartial, and the court instructed the jury that it could not consider Petitioner's in-custody status in determining whether he was guilty or not guilty. (Respondents' Exh. W)   The post-conviction court concluded that "[b]ecause the issue was dealt with at trial and on appeal, [Petitioner's] claim that his trial counsel and appellate counsel were ineffective for not raising the issue is contrary to the

1  record." (*Id.*)  The court further found that, because it was addressing the merits of

2  Petitioner's claim of ineffective assistance, any claim challenging post-conviction counsel's

3  failure to raise the "jail attire" issue was moot.

4        The post-conviction court further noted that, having presided over the trial, it was

5  familiar with the "overwhelming" evidence against Petitioner.  The court noted that the

6  evidence showed that Petitioner, who was charged with one count of theft of means of

7  transportation, was seen driving the car that was later determined to be stolen.  Petitioner

8  tried to evade police in the car and on foot.   The post-conviction court concluded that,

9  Petitioner's "attire did not influence the outcome of the case.   In other words, in this Court's

10  opinion, the strength of the evidence would have resulted in a conviction even if [Petitioner]

11  had chosen to 'dress out' for trial." (Respondents' Exh. W)

12        On May 14, 2008, Petitioner petitioned the Arizona Court of Appeals to review the

13  denial of post-conviction relief.  (Respondents' Exhs. X, Y, Z)  The appellate court

14  summarily denied review on July 15, 2009.  (Respondents' Exh. AA)  Petitioner sought

15  review in the Arizona Supreme Court, which was denied on December 15, 2009.

16  (Respondents' Exhs. BB, CC)

17      **D.  Federal Petition for Writ of Habeas Corpus**

18        Thereafter, Petitioner filed a timely Petition for Writ of Habeas Corpus pursuant to 28

19  U.S.C. § 2254 in this Court.  (Doc. 1, Doc. 18 at 12-14)  Petitioner raises the following

20  claims for relief: (1) his "right against self-incrimination under the Fifth Amendment" and

21  his right to due process were violated when he was "forced to appear before the jury in jail

22  clothes and shackles;" and (2) his Sixth Amendment right to effective assistance of counsel

23  was violated by counsel's failure to object to Petitioner's appearance at trial in prison garb

24  and restraints.  (Doc. 1 at 6, 16-18)  Respondents have filed an Answer to the Petition, to

25  which Petitioner has not replied and the deadline has passed.  For the reasons set forth

26  below, the Petition should be denied.

27

28

## II.  Exhaustion and Procedural Bar

Respondents argue that Petitioner's claim that his Fifth Amendment right against self-incrimination is procedurally defaulted and barred from federal habeas corpus review by virtue of the Arizona Court of Appeals' denial of that claim on the basis of an adequate and independent state-law ground.  (Doc. 18 at 19)  The Court will consider the procedural bar issue below.

### A.  Applicable Law

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him.  28 U.S.C. § 2254(b). When seeking habeas relief, petitioner bears the burden of showing that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The exhaustion inquiry focuses on the availability of state remedies at the time the petition for writ of habeas corpus is filed in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  The prisoner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. 845. "One complete round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State."  *Id.*

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").  In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on

1   direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles* , 483 F.Supp.2d

2   925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

3   　　　In addition to presenting his claims to the proper court, a state prisoner must fairly

4   present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly

5   presented" in state court only if a petitioner has described both the operative facts and the

6   federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that

7   all of the facts necessary to support the federal claim were before the state court or that a

8   "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28 (stating that a

9   reference to ineffective assistance of counsel does not alert the court to federal nature of the

10  claim). Rather, the habeas petitioner must cite in state court to the specific constitutional

11  guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d

12  895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such

13  as due process, equal protection, and the right to a fair trial, are insufficient to establish fair

14  presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th

15  Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*,

16  223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal

17  to a constitutional guarantee," such as a naked reference to "due process," or to a

18  "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of

19  the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152,

20  162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be

21  decided "on the same considerations" under state or federal law, the petitioner must make

22  the federal nature of the claim "explicit either by citing federal law or the decision of the

23  federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim

24  to the state court if the court must read beyond the pleadings filed in that court to discover

25  the federal claim. *Baldwin*, 541 U.S. at 27.

26  　　　In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

27  satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

28

- 10 -

1 | through the proper vehicle, and (3) by providing the proper factual and legal basis for the

2 | claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

3 |      A habeas petitioner's claims may be precluded from federal review in either of two

4 | ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

5 | in state court but found by that court to be defaulted on state procedural grounds such as

6 | waiver or preclusion.  *See Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009); *Ylst*

7 | *v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30.  Thus, a

8 | petitioner may be barred from raising federal claims that he did not preserve in state court by

9 | making a contemporaneous objection at trial, on direct appeal, or when seeking post-

10 | conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to

11 | raise contemporaneous objection to alleged violation of federal rights during state trial

12 | constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th

13 | Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held

14 | that habeas petitioner had waived claims by failing to raise them on direct appeal or in first

15 | petition for post-conviction relief.)  If the state court also addressed the merits of the

16 | underlying federal claim, the "alternative" ruling does not vitiate the independent state

17 | procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971

18 | F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel

19 | claims "barred under state law," but also discussed and rejected the claims on the merits, *en*

20 | *banc* court held that the "on-the-merits" discussion was an "alternative ruling" and the

21 | claims were procedurally defaulted and barred from federal review).  A higher court's

22 | subsequent summary denial of review affirms the lower court's application of a procedural

23 | bar.  *Nunnemaker*, 501 U.S. at 803.   However, "in order to constitute adequate and

24 | independent grounds sufficient to support a finding of procedural default, a state rule must

25 | be clear, consistently applied, and well-established at the time of Petitioner's default." *Wells*

26 | *v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).   The Supreme Court had held that "a

27 | discretionary state procedural rule can serve as an adequate ground to bar federal habeas

28 | review," and that "a discretionary rule can be 'firmly established' and 'regularly followed' -

1    even if the appropriate exercise of discretion may permit consideration of a federal claim in

2    some cases but not in others."  *Kindler*, 130 S.Ct. at 618.   Likewise, occasionally excusing

3    non-compliance with a procedural rule does not render a state procedural bar inadequate.

4    *See Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989).

5         Arizona courts have been consistent in their application of procedural default rules.

6    *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Arizona Rule of Criminal

7    Procedure 32.2(a) is an adequate and independent procedural bar); *Cook v. Schriro*, 538 F.3d

8    1000, 1026 (9th Cir. 2008) (stating that "[p]reclusion of issues for failure to present them at

9    an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent

10   of federal law because they do not depend upon a federal constitutional ruling on the

11   merits.'") (footnote omitted) (quoting *Smith*, 536 U.S. at 860); *Ortiz v. Stewart*, 149 F.3d

12   923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or

13   regularly" followed Rule 32).

14        The second procedural default scenario arises when a petitioner failed to present his

15   federal claims to the state court, but returning to state court would be "futile" because the

16   state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

17   previously unraised claims.  *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v.

18   Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d

19   1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-

20   conviction review is precluded for claims waived at trial, on appeal, or in any previous

21   collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must

22   be filed within thirty days of trial court's decision).  A state post-conviction action is futile

23   where it is time-barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th

24   Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal

25   of an Arizona petition for post-conviction relief, distinct from preclusion under Rule

26   32.2(a)).  This type of procedural default is known as "technical" exhaustion because

27   although the claim was not actually exhausted in state court, the petitioner no longer has an

28   available state remedy.  *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted

1   his federal claims in state court meets the technical requirements for exhaustion; there are no

2   remedies any longer 'available' to him.").

3          In either case of procedural default, federal review of the claim is barred absent a

4   showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v.*

5   *Haley*, 541 U.S. 386, 393-94, (2004); *Hughes,* 800 F.2d at 907-08. To establish "cause," a

6   petitioner must establish that some objective factor external to the defense impeded his

7   efforts to comply with the state's procedural rules. *Id.* The following objective factors may

8   constitute cause: (1) interference by state officials, (2) a showing that the factual or legal

9   basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance

10  of counsel. *Id.* Ordinarily, the ineffective assistance of counsel in collateral proceedings

11  does not constitute cause because "the right to counsel does not extend to state collateral

12  proceedings or federal habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301,

13  1306 (9th Cir. 1996).

14         Prejudice is actual harm resulting from the constitutional violation or error. *Magby v.*

15  *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner

16  bears the burden of demonstrating that the alleged constitutional violation "worked to his

17  actual and substantial disadvantage, infecting his entire trial with error of constitutional

18  dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d

19  1119, 1123 (9th Cir. 1996). Where petitioner fails to establish cause, the court need not

20  reach the prejudice prong.

21         A federal court may also review the merits of a procedurally defaulted claim if

22  petitioner demonstrates that failure to consider the merits of his claim will result in a

23  "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A

24  "fundamental miscarriage of justice" occurs when a constitutional violation has probably

25  resulted in the conviction of one who is actually innocent. *Id.* To satisfy the "fundamental

26  miscarriage of justice" standard, petitioner must establish that it is more likely than not that

27  no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

28  evidence. *Id*. at 327; 28 U.S.C. § 2254(c)(2)(B). Even if a petitioner asserts a claim of

1    actual innocence to excuse his procedural default of a federal claim, federal habeas relief

2    may not be granted absent a finding of an independent constitutional violation occurring in

3    the state criminal proceedings. *Dretke*, 541 U.S. at 393-94.

4        **B. Fifth Amendment Claim**

5        Petitioner argues that his Fifth Amendment right against self-incrimination was

6    violated when he appeared before the jury in jail clothes and shackles. Respondents argue

7    that this claim is procedurally barred from federal habeas corpus review because the Arizona

8    Court of Appeals rejected this claim on the basis of an adequate and independent state

9    procedural rule. Petitioner presented this claim on direct appeal. (Respondents' Exh. J)

10   The Court of Appeals first found that "the trial court did not subject [Petitioner] to undue

11   prejudice," and further denied the claim on procedural grounds, stating that Petitioner has

12   "either invited or waived any error regarding his appearance." (Respondents' Exh. K at 5)

13   Arizona courts have consistently held that a defendant who invites error has waived a

14   subsequent challenge to it on appeal because a party "'may not be heard [on appeal] to decry

15   a result fashioned by its own handiwork.'" *State v. Moreno*, 173 Ariz. 471, 473, 844 P.2d

16   638, 640 (Ariz.Ct.App. 1992) (quoting *Sisson v. State*, 16 Ariz. 170, 175, 141 P. 713, 714-15

17   (1914)). The invited-error doctrine is an adequate and independent state procedural rule

18   upon which the Arizona Court of Appeals relied to reject Petitioner's challenge to his

19   appearance at trial in prison garb. "The fact that the court went on to discuss the lack of

20   merit of [the procedurally-precluded claim] does not eliminate the procedural bar." *Poland*,

21   169 F.3d at 586 n. 8 (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)).[3]

22       Accordingly, Petitioner's Fifth Amendment claim is procedurally barred from federal

23   habeas corpus review. *See Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009);

24   *Nunnemaker*, 501 U.S. at 802-05.

25   _____

26       [3]  Because the Arizona Court of Appeals' alternate discussion of the merits of Petitioner's
27   procedurally barred claim does not vitiate the procedural bar, the Court need not consider
     Respondents' discussion regarding whether review for fundamental error is an adequate and
28   independent state law ground. (Doc. 18 at 21-26)

1    Moreover, Petitioner's Fifth Amendment claim lacks merit, as discussed in Section
2    IV below.

3    **C. Overcoming the Procedural Bar**

4    As set forth above, Petitioner's Fifth Amendment claim is procedurally defaulted and
5    barred from federal habeas corpus review absent a showing of "cause and prejudice" or a
6    "fundamental miscarriage of justice."

7    **1. Cause and Prejudice**

8    To establish "cause," a petitioner must establish that some objective factor
9    external to the defense impeded his efforts to comply with the state's procedural rules.
10   *Murray*, 477 U.S. at 488-492.  The following objective factors may constitute cause: (1)
11   interference by state officials, (2) a showing that the factual or legal basis for a claim was
12   not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*
13   Prejudice is actual harm resulting from the constitutional violation or error.  *Magby v.*
14   *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for
15   his procedural default, the court need not consider whether petitioner has shown actual
16   prejudice resulting from the alleged constitutional violations.  *Smith v. Murray*, 477 U.S.
17   527, 533 (1986).

18   Petitioner does not assert any basis to overcome the procedural bar.  Because
19   Petitioner offers no legitimate "cause" which precluded him from properly exhausting his
20   state remedies, the Court need not reach the issue of prejudice.  *Engle*, 456 U.S. at 134 n. 43.

21   **2. Fundamental Miscarriage of Justice**

22   Additionally, Petitioner has not shown that failure to consider his Fifth
23   Amendment claim will result in a fundamental miscarriage of justice. A federal court may
24   review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that
25   failure to consider the merits of his claim will result in a "fundamental miscarriage of
26   justice." *Schlup*, 513 U.S. at 327.  A "fundamental miscarriage of justice" occurs when a
27   constitutional violation has probably resulted in the conviction of one who is actually
28   innocent.  *Id.*

1    This gateway "actual innocence" claim differs from a substantive actual innocence

2    claim.  *Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006).  The Supreme Court

3    described the gateway showing in *Schlup*, 513 U.S. at 315-16, as a less stringent standard

4    than a substantive claim of actual innocence. *See also Carriger v. Stewart*, 132 F.3d 463,

5    476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence

6    claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that

7    he is innocent.").  If Petitioner passes through the *Schlup* gateway, the court is only

8    permitted to review his underlying constitutional claims.  *Smith*, 466 F.3d at 807.  The

9    fundamental miscarriage of justice exception applies only to a "narrow class of cases" in

10   which a petitioner makes the extraordinary showing that an innocent person was probably

11   convicted due to a constitutional violation.  *Schlup*, 513 U.S. at 231.  To demonstrate a

12   fundamental miscarriage of justice, Petitioner must show that "a constitutional violation has

13   resulted in the conviction of one who is actually innocent."  *Id*. at 327.  To establish the

14   requisite probability, Petitioner must prove with new reliable evidence that "it is more likely

15   than not that no reasonable juror would have found petitioner guilty beyond a reasonable

16   doubt."  *Id*.  New evidence presented in support of a fundamental miscarriage of justice may

17   include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

18   physical evidence that was not presented at trial."  *Id.* at 324, *see also, House v. Bell*, 547

19   U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve

20   evidence that the trial jury did not have before it).

21   Petitioner has not established that, in light of newly discovered evidence, "it is more

22   likely than not that no reasonable juror would have found petitioner guilty beyond a

23   reasonable doubt."  *Schlup*, 513 U.S. at 324, 327.

24   **III.   Standard of Review**

25   Respondents concede that Petitioner's remaining claims are properly before the Court

26   on habeas corpus review.   Respondents, however, argue that Petitioner is not entitled to

27   habeas corpus relief because he has not established that the Arizona courts' resolution of his

28   claims was based on an unreasonable determination of the facts; or that the Arizona courts'

1   determination was either contrary to, or based an unreasonable application of, clearly

2   established federal law.  28 U.S.C. 2254(d).

3         This Court's consideration of the merits of Petitioner's claims is constrained by the

4   applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the

5   Antiterrorism and Effective Death Penalty Act ("AEDPA").  The ADEPA "modified a

6   federal habeas court's role in reviewing state prisoner applications in order to prevent

7   federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

8   extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The standard in

9   § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S., ___ , 131

10  S.Ct. 770, 786 (2011).  Section "2254 stops short of imposing a complete bar on federal

11  court relitigation of claims already rejected in state court proceedings." *Id*. (citations

12  omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme

13  malfunction in the state criminal justice systems,' not a substitute for ordinary error

14  correction through appeal."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

15        Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is

16  shown that the earlier state court's decision "was contrary to" federal law then clearly

17  established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v.*

18  *Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such

19  law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in

20  light of the record before the state court, § 2254(d)(2).  *Richter*, 131 S.Ct. at 785; *see also*

21  *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir.  2006).  To determine whether a state court

22  ruling was "contrary to" or involved an "unreasonable application" of federal law, courts

23  look exclusively to the holdings of the Supreme Court which existed at the time of the state

24  court's decision.  *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___, 130

25  S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010)).  The Ninth Circuit has acknowledged that it

26  cannot reverse a state court decision merely because that decision conflicts with Ninth

27  Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378 F.3d 952, 957 (9th

28  Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.  2003).  Even if the state court

1   neither explains its ruling nor cites United States Supreme Court authority, the reviewing

2   federal court must nevertheless examine Supreme Court precedent to determine whether the

3   state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*,

4   537 U.S. 3, 8 (2003)). The Supreme Court held in *Early*, and recently reaffirmed in *Richter*,

5   that citation to federal law is not required and that compliance with the habeas statute "does

6   not even require awareness of our cases, so long as neither the reasoning nor the result of the

7   state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784.

8   "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's

9   burden still must be met by showing there was no reasonable basis for the state to deny

10   relief. This is so whether or not the state court reveals which of the elements in a multipart

11   claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one,

12   has been adjudicated." *Richter*, 131 S.Ct. at 784.

13        Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a

14   rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it

15   confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

16   Court] and nevertheless arrives at a result different from [Supreme Court] precedent."

17   *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A

18   state court decision is an "unreasonable application of" federal law if the court identifies the

19   correct legal rule, but unreasonably applies that rule to the facts of a particular case.

20   *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect

21   application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S.

22   652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state

23   court's decision is objectively unreasonable."). "A state court's determination that a claim

24   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on

25   the correctness of the state court's decision.'" *Richter*, 131 S.Ct. 786 (citing *Yarborough*,

26   541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires

27   considering the rule's specificity. The more general the rule, the more leeway courts have in

28

1  reaching outcomes in case-by-case determination.'" *Richter*, 131 S.Ct. at 786 (citing

2  *Yarborough*, 541 U.S. at 664).

3       The habeas court presumes that the state court's factual determinations are correct

4  and petitioner bears the burden of rebutting this presumption by clear and convincing

5  evidence.  28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a

6  State court shall be presumed to be correct.  The applicant shall have the burden of rebutting

7  the presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*,

8  354 F.3d 1101, 1106 (9th Cir. 2004).

9       Where a state court decision is deemed  "contrary to" or an "unreasonable application

10 of" clearly established federal law, the reviewing court must next determine whether it

11 resulted in constitutional error.  *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

12 On habeas review, the court assesses the prejudicial impact of most constitutional errors by

13 determining whether they "had substantial and injurious effect or influence in determining

14 the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

15 *United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht*

16 standard applies whether or not the state court recognized the error and reviewed it for

17 harmlessness).  The *Brecht* harmless error analysis also applies to habeas review of a

18 sentencing error.  The test is whether such error had a "substantial and injurious effect" on

19 the sentence.  *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas

20 relief to be granted based on constitutional error in capital penalty phase, error must have

21 had substantial and injurious effect on the jury's verdict in the penalty phase.); *Hernandez v.*

22 *LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence

23 of three of petitioner's prior convictions was insufficient, petitioner was not prejudiced by

24 the court's consideration of those convictions because the trial court found four other prior

25 convictions which would have supported petitioner's sentence.)  The Court will review

26 Petitioner's claims under the applicable standard of review.

27

28

## IV.  Analysis

### A.  Prison-Attire/In-Custody Status Claim

Petitioner contends that his Fourteenth Amendment right to a fair trial and his Fifth Amendment right against self-incrimination were violated when he was forced to appear in front of the jury in shackles and prison clothing. (Doc. 1) On direct review, Petitioner argued that his appearance in prison attire violated his right to due process and a fair trial.  The Court of Appeals rejected this claim.

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Drope v. Missouri*, 420 U.S. 162 (1975).  The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.  The Supreme Court has stated:

> The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.

*Coffin v. United States*, 156 U.S. 432, 453 (1895).

"To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

Clearly established federal law does not prohibit the State from trying a defendant in prison clothing.  Rather, the State may not force a defendant to appear in such attire.  In *Williams*, 425 U.S. at 504-05, the Supreme Court held that a defendant may not be compelled to wear jail clothes before the jury, because no "essential state policy" is served by "compelling a defendant to dress in this manner." *Id.*   The Court emphasized that "the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire." *Id.* at 507.  The Court explained that the focus is on compulsion because "instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the

1   defendant in jail clothes in the hope of eliciting sympathy from the jury." *Williams*, 425

2   U.S. at 508 (citing *Andern v. Watt*, 475 F.2d 881, 882 (10th Cir. 1973)).

3        In this case, the trial court noted that Petitioner had "chosen not to change into street

4   clothes." (Tr. 4/13/05 at 19)  Petitioner now argues that the only street clothes he was

5   provided did not fit properly, essentially forcing him to remain in prison garb.  (Doc. 1)

6   Petitioner did not raise the issue of ill-fitting clothes to the state courts, and did not object at

7   trial to appearing in prison garb.  In view of the foregoing, the appellate court reasonably

8   concluded that Petitioner was not forced to wear prison attire.  In *Felts v. Estelle*, 875 F.2d

9   785, 785-87 (9th Cir. 1989), the court held that, where a defendant informed the trial court on

10  the record that the police lost all of his clothing and requested that the trial court provide

11  funds for suitable clothes, the trial court's failure to provide the indigent defendant with

12  suitable clothes or reasonable funds to purchase them, constituted "state compulsion with the

13  meaning of *Williams*." *Id*.   Unlike *Felts*, in this case, Petitioner did not inform the court that

14  the civilian clothing provided did not fit properly, and did not object to his attire at trial.

15  Petitioner's failure to object to being tried in prison attire is sufficient to negate the presence

16  of compulsion necessary to establish a constitutional violation.  *Williams*, 425 U.S. at 508-

17  09.

18       Additionally, Petitioner is not entitled to habeas corpus relief on his claim that his

19  appearance in prison garb and shackles violated his Fifth Amendment right against self-

20  incrimination also lacks merit.   The trial court stated that Petitioner "has chosen to not

21  change into street clothes. He is obviously in custody." (Tr. 4/13/05 at 19)  This statement

22  does not confirm whether Petitioner was shackled, as the court may have simply been

23  referring to Petitioner's clothing.  Because the State court's decision stated that Petitioner

24  was shackled, in the absence of clear and convincing evidence to the contrary, the Court will

25  assume Petitioner was shackled.  *See* 28 U.S.C. § 2254(e)(1).

26       In support of his Fifth Amendment claim, Petitioner cites *Deck v. Missouri*, 544 U.S.

27  622 (2005).  In *Deck,* the Court held that court-ordered shackling during the penalty phase of

28  a capital trial, without a case-specific finding that security needs justified the shackling,

violates a defendant's due process rights.  *Id.*   The Court stated that, the Constitution does not permit a state to use "visible shackles routinely in the guilt phase of a criminal trial," and that, "where a court without adequate justification, orders the defendant to wear shackles that will be seen by a jury, the defendant need not demonstrate actual prejudice to make out a due process violation.  The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Deck*, 544 U.S. at 633-35 (quoting *Chapman v. California*, 386 U.S. 12, 24 (1966)).

Assuming Petitioner established a violation of his due process rights under *Deck*, because this is a § 2254 proceeding, Petitioner must show that the constitutional error resulted in "actual prejudice," *i.e,* it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008) (finding that petitioner failed to show that "wearing the leg brace for the first two days of a six-day trial had a substantial and injurious effect or influence in determining the jury's verdict.") (internal citations omitted). Petitioner has not met the *Brecht* standard.  First, the record reflects that Petitioner chose to attend trial in prison clothes, and his choice of attire already indicated that he was in custody.   Thus, even assuming Petitioner were shackled during trial, such restraints would not have resulted in actual prejudice because it would not have revealed anything the jury had not already ascertained from Petitioner's attire.  *Fountain v. United States*, 211 F.3d 429, 434-36 (7th Cir. 2000) (stating that "even if we were to assume that petitioner was shackled during trial and the jury could and did observe his shackles, such a viewing would not have caused any prejudice . . . because it would have revealed facts the jury in all probability ascertained from the trial . . . .").

Additionally, the trial court took steps to eliminate any prejudice from the fact that Petitioner was "obviously in custody."  During *voir dire*, the court ensured that the prospective jurors were willing to follow an instruction not to consider Petitioner's in-custody status in determining Petitioner's guilt.  (Tr. 4/13/05 at 19)   Additionally, the court instructed the jury that "[y]ou must not consider the fact that [Petitioner] is in custody in

- 22 -

1    determining whether he is guilty or not guilty."   (Tr. 4/14/05 at 100-02)   The jury is

2    presumed to have followed the court's instructions.   *Rhoades v. Henry*, 598 F.3d 495, 510

3    (9ᵗʰ Cir. 2010); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow

4    its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

5           Even assuming a due process violation based on Petitioner's attire and alleged

6    shackles, in view of the overwhelming evidence in this case, Petitioner cannot show that the

7    constitutional error resulted in "actual prejudice," because it had a "substantial and injurious

8    effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (1993).  The

9    evidence at trial revealed that, at the time of his arrest, Petitioner was driving a stolen Ford

10   Probe, that had a "punched" ignition and a license plate that did not belong to the vehicle.

11   When police tried to pull Petitioner over for running a red light, he attempted to evade

12   officers.  After crashing the car, Petitioner exited the car and fled on foot.  When Petitioner

13   saw police pursuing him, he "cut southbound through houses and jumping fences," for about

14   a block or two, until he "ran out of gas."  When Petitioner was taken into custody, the police

15   obtained evidence which indicated that Petitioner had stolen the vehicle, including: (1)

16   Petitioner had multiple car keys, a blue plastic "key card," and a pair of white cotton gloves;

17   (2) the vehicle contained a license plate on the floorboard that did not belong to the car; (3)

18   several other keys were inside the car, including five Ford keys, and a Nissan key; (4)

19   Petitioner gave a false name to police; and (5) Petitioner's explanation about how he

20   obtained the vehicle, why he hadn't noticed that the ignition was "punched," and why he

21   was carrying numerous car keys was incredible. *See Cox*, 613 F.3d at 891 (stating that "we

22   have held that the unconstitutional shackling of a defendant results in prejudice only if the

23   evidence of guilt is not overwhelming.") (internal citations omitted).   In view of the

24   foregoing, Petitioner is not entitled to habeas corpus relief based on his claim regarding his

25   appearance at trial.

26      **B.  Ineffective Assistance of Counsel**

27           Petitioner also claims that trial counsel was ineffective for failing to object to his

28   appearance in shackles and prison attire.  Petitioner has not shown that the state court's

1  rejection of this claim was contrary to, or an unreasonable application of, clearly established

2  federal law.

3  The controlling Supreme Court precedent on claims of ineffective assistance of

4  counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail upon a claim of

5  ineffective assistance of counsel, petitioner must show that: (1) counsel's performance was

6  deficient; and that (2) counsel's deficient performances prejudiced petitioner.  *Strickland*,

7  466 U.S. at 687-94.  Under the first prong, to be deficient, counsel's representation must

8  have fallen "below an objective standard of reasonableness." *Strickland*, 466 U. S. at 688.

9  There is a "strong presumption" that counsel's representation is within the "wide range" of

10  reasonable professional assistance.  *Id*. at 689; *see also Kimmelman v. Morrison*, 477 U.S.

11  365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).   "A fair assessment of attorney

12  performance requires that every effort be made to eliminate the distorting effects of

13  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

14  the conduct from counsel's perspective at the time." *Bonin*, 59 F.3d at 833 (quoting

15  *Strickland*, 466 U.S. at 689).  "'Surmounting *Strickland's* high bar is never an easy task.'"

16  *Richter*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, __ U.S.___, 130 S.Ct. 1473, 1485

17  (2010)).  "The question is whether an attorney's representation amounted to incompetence

18  under 'prevailing professional norms', not whether it deviated from best practices or most

19  common custom." *Richter*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S. at 690).

20  To succeed on a claim of ineffective assistance, a petitioner must also establish that

21  counsel's deficient performance resulted in prejudice.  *Strickland*, 466 U.S. at 691-92.  To

22  establish prejudice, petitioner must show that "there is a reasonable probability that, but for

23  counsel's unprofessional errors, the result of the proceeding would have been different."

24  *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to

25  undermine confidence in the outcome. *Id*.  The "potential prejudicial effect of counsel's

26  deficient performance must be evaluated in light of" the strength of the prosecution's case.

27  *Johnson v. Baldwin*, 114 F.3d 835, 838 (9th Cir. 1997).

28

1    Establishing that a state court's application of *Strickland* was unreasonable under

2 §2254(d) is difficult, because both standards are "highly deferential," 466 U. S. at 689, and

3 because *Strickland's* general standard has a substantial range of reasonable applications.

4 The issue under §2254(d) is not whether counsel's actions were reasonable, but whether

5 there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

6 *Richter*, 131 S.Ct. at 788.  *See also Yarbrough*, 540 U.S. at 6 ("Judicial review of a defense

7 attorney's summation is therefore highly deferential — and doubly deferential when it is

8 conducted through the lens of federal habeas.").

9    Here, Petitioner has not established that trial counsel rendered deficient performance

10 by failing to object to Petitioner's appearance in prison garb and shackles.  First, the record

11 indicates that Petitioner chose to appear in prison clothing.  (Tr. 4/13/05 at 19)   Although

12 Petitioner now argues that the civilian clothing provided did not fit properly, the record does

13 not indicate that he ever raised that issue with his counsel.   Thus, counsel had no reason to

14 object to Petitioner's appearance in prison attire.

15    Even if Petitioner was physically restrained, and the jury saw such restraints,

16 Petitioner has not established that he was prejudiced by counsel's failure to object thereto.

17 As set forth above, the evidence against Petitioner was overwhelming.  *See Whitman*, 434

18 F.3d at 972 (rejecting ineffective assistance claim finding that the "evidence of Whitman's

19 guilt was overwhelming, and his attire was not an outcome determinative factor in the jury's

20 decision."); *Roche v. Davis*, 291 F.3d 473, 483 (7th Cir. 2002) (in guilt phase, failure to

21 object to restraints met *Strickland*'s first prong, but not its second); *Fountain*, 211 F.3d at

22 436 ("[W]e cannot say with any certainty that 'but for' counsel's failure to object to or

23 appeal the jury's observation of his shackles, the outcome of the case would have been

24 different, in light of the substantial evidence of his guilt posited at trial.").  Additionally, the

25 court instructed the jury that it could not consider Petitioner's in-custody status in

26 determining his guilt.   In view of the overwhelming evidence against Petitioner and the jury

27 instructions, Petitioner has not shown that, but for counsel's failure to object to his

28 appearance in restraints before the jury, there is a reasonable probability that the outcome of

1  the trial would have been different.  *See Marquard v. Secretary for Department of*
2  *Corrections*, 429 F.3d 1278, 1313-14 (11th Cir. 2005) (stating that after *Deck*, a habeas
3  petitioner still bears the burden in an ineffective assistance of counsel claim, to establish a
4  reasonable probability that, but for counsel's failure to object to shackling, the result of his
5  sentencing would have been different.).

6  **V. Conclusion**

7        For the reasons set forth above, the Petition for Writ of Habeas Corpus should be
8  denied because Petitioner's claims either lack merit or are procedurally barred.

9        Accordingly,

10        **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc.
11  1, be **DENIED**.

12        **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
13  to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is
14  justified by a plain procedural bar and jurists of reason would not find the procedural ruling
15  debatable and because Petitioner has not made a substantial showing of the denial of a
16  constitutional right.

17        This recommendation is not an order that is immediately appealable to the Ninth
18  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
19  Appellate Procedure, should not be filed until entry of the District Court's judgment.  The
20  parties shall have (14) fourteen days from the date of service of a copy of this
21  recommendation within which to file specific written objections with the Court.  *See,* 28
22  U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure.  Thereafter, the parties
23  have (14) fourteen days within which to file a response to the objections.  Failure timely to
24  file objections to the Magistrate Judge's Report and Recommendation may result in the
25  acceptance of the Report and Recommendation by the District Court without further review.
26  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to
27  file objections to any factual determinations of the Magistrate Judge may be considered a
28  waiver of a party's right to appellate review of the findings of fact in an order or judgment

1    entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of

2    Civil Procedure.

3         DATED this 31st day of May, 2011.

4

5                               Lawrence O. Anderson

6                               Lawrence O. Anderson
                           United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28